**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| JOSHUA R. MICHAEL,<br>HILLARY A. MICHAEL, and<br>WILLIAM T. RUSSELL,<br>*Individually and as Trustee of the*<br>*William T. Russell Inter Vivos Trust*<br><br>        Plaintiffs,<br><br>    v.<br><br>GRP MADISON LLC,<br>GEORGIA RENEWABLE POWER LLC, and<br>GREENFUELS ENERGY LLC,<br><br>        Defendants. | **CIVIL ACTION NO.:**<br><br>**TRIAL BY JURY DEMANDED** |

**COMPLAINT FOR CIVIL PENALTIES, INJUNCTIVE RELIEF, DAMAGES, AND**
**ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

1.    Plaintiffs Mr. and Mrs. Joshua R. and Hillary A. Michael, and William T. Russell, *individually and as trustee of the William T. Russell Inter Vivos Trust*, bring this citizen suit under the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a), against Defendants GRP Madison, LLC, Georgia Renewable Power, LLC, and GreenFuels Energy, LLC, for past and continuing discharges of excess and heavily polluted stormwater containing silt, sediment, concrete wastewater, construction waste, and other pollutants (collectively, "Pollutants") from industrial and construction activity at a power plant in Colbert, Georgia, owned and or operated by Defendants, through pipes, culverts, channels, and other point sources, and onto/into fields, ponds, and tributaries of Beaverdam Creek on Plaintiffs' farms, without valid coverage under, and/or in violation of the terms and conditions of, a National Pollutant Discharge Elimination System ("NPDES") permit.

2.     Plaintiffs seek an injunction ordering Defendants to cease their violations of the CWA, repair and cleanup Plaintiffs' farms, ponds, and streams, pay civil penalties to the U.S. Treasury, and reimburse Plaintiffs for their attorneys' fees and expenses of litigation.  Plaintiffs also bring pendent state law claims of nuisance, trespass, violation of riparian rights, negligence/negligence per se, compensatory and punitive damages, and attorneys' fees and expenses of litigation.

## PARTIES AND JURISDICTION

### Fig. 1: GRP Madison Facility and Russell Farm in Background (Dec. 2018)



3.     In 2015, Defendant GRP Madison acquired Madison County Parcel No. 0071032 (54.39 acres more or less) ("GRP Madison Facility").  *See* Figs. 1 & 2.

4.      Plaintiffs Mr. and Mrs. Joshua R. and Hillary A. Michael own, farm, and reside with their children on about 47.67 acres of real property directly downstream of the GRP Madison Facility and located at 815 H V Chandler Road, which they acquired around 2012 ("Michael Farm").  The Michaels make a living farming chickens on the Michael Farm.

5.      Plaintiff William T. Russell owns, farms, and resides on parcels of real property adjacent to the GRP Madison Facility, including Parcel No. 0071074 (187.19 acres), 0071033 (43.5 acres), and 0072023 (214.75 acres) ("Russell Farm").  For many years, Mr. Russell and his son and grandson have made a living raising cattle on the Russell Farm.

6.      Plaintiffs' farms contain several ponds and tributaries of Beaverdam Creek.

**Fig. 2: Farms, Waters, and Point Sources at Issue (from Notice Letter)**

7.      Defendant GRP Madison, LLC, is a Delaware corporation.  The principal office of GRP Madison is located at 2100 South Bridge Parkway, Birmingham, Alabama 35209, and its registered agent is Capitol Corporate Services, Inc. located at 3675 Crestwood Parkway, NW, Suite 350, Duluth, Georgia 30096.

8.      Defendant Georgia Renewable Power, LLC ("GRP"), is a Delaware corporation. Defendant GRP has the same principal office and registered agent as Defendant GRP Madison.

9.      Defendant GreenFuels Energy, LLC, is a Delaware corporation.  Defendant GreenFuels Energy has the same principal office and registered agent as Defendants GRP and GRP Madison.

10.     Defendant GRP has 100% ownership of Defendant GRP Madison.

11.     Defendant GreenFuels Energy has 100% control and ownership of Defendants GRP and GRP Madison.

12.     Defendant GRP Madison is the mere alter ego and/or business conduit of Defendants GRP and/or GreenFuels Energy.

13.     On December 20, 2018, Plaintiffs sent Defendants the attached Notice of Intent to Sue and Demand to Abate Letter via certified mail ("Notice Letter").  The allegations of this Notice Letter are hereby incorporated by reference.

14.     This Notice Letter notified Defendants of the CWA violations alleged herein and Plaintiffs' intent to file a citizen suit after 60 days should the violations continue.

15.     As alleged in more detail below, Defendants have failed to cease their violations of the CWA alleged in the Notice Letter, and these violations are continuous and/or reasonably likely to reoccur.

4

16.     Neither the Georgia Environmental Protection Division ("EPD") nor the U.S. Environmental Protection Agency ("EPA") are prosecuting a pending civil or criminal action to redress the violations alleged herein.

17.     This Court has exclusive jurisdiction over this case under § 505(a) of the Clean Water Act.  33 U.S.C. § 1365(a).

## STATUTORY AND REGULATORY BACKGROUND

**I.      The Clean Water Act.**

18.     One objective of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).

19.     A second objective of the CWA is also to ensure that citizens can fish, swim, and recreate in all the Nation's waters.  33 U.S.C. § 1251(a)(2).

20.     To achieve these objectives, § 301(a) of the CWA prohibits the "discharge of pollutants" by any "person" into "waters of the United States."

21.     "Pollutants" means "dredged spoil, solid waste . . . garbage . . . biological materials . . . rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."  33 U.S.C. § 1362(6).

22.     Section 402 of the CWA, 33 U.S.C. § 1342, establishes the National Pollutant Discharge Elimination System permitting program, which prohibits the discharge of pollutants from "point sources" into "waters of the United States" without a NPDES permit or in violation of the terms and conditions of a NPDES permit.  *See also* 33 U.S.C. §§ 1311, 1344.

23.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch,

channel, tunnel, conduit, well [or] discrete fissure . . . from which pollutants are or may be discharged."

24.     The term "point source" also means sheet flow which is later conveyed via a point source to waters of the United States.

25.     Pursuant to § 402(b) of the CWA, 33 U.S.C. § 1342(b), U.S. EPA has delegated to Georgia EPD the authority to issue NPDES permits in the State of Georgia under the Georgia Water Quality Control Act ("GWQCA").

**II.     NPDES Construction and Industrial Stormwater General Permits.**

26.     In Georgia, the CWA and GWQCA prohibit any person from discharging stormwater associated with construction activity without first submitting to EPD a valid Notice of Intent ("NOI") to be covered by NPDES Construction Stormwater General Permit No. GAR100001 ("Stand Alone Construction"), GAR100002 ("Infrastructure Construction"), and/or GAR100003 ("Common Development Construction") ("General Permits"), and except in accordance with the limitations, monitoring requirements, and other conditions set forth in these General Permits.

27.     The NPDES Construction Stormwater General Permits also require the owner and operator of a construction site to prepare and submit to EPD an Erosion, Sedimentation, and Pollution Control Plan ("ESPC Plan") to obtain valid coverage under the permits.

28.     The NPDES Construction Stormwater General Permits require ESPC Plans to "include, as a minimum, best management practices [("BMPs")], including sound conservation and engineering practices to prevent and minimize erosion and resultant sedimentation, which are consistent with, and no less stringent than, those practices contained in the 'Manual for Erosion and Sediment Control in Georgia' (Manual) published by the State Soil and Water

6

Conservation Commission as of January 1 of the year in which the land-disturbing activity was permitted."

29. BMPs are "schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent and minimize erosion and resultant sedimentation, which are consistent with, and no less stringent than, those practices contained in the [Manual] to prevent or reduce the pollution of waters of Georgia."

30. The General Permits require the use of BMPs for all construction activities which "must be implemented in accordance with the design specifications contained in the [Manual] to prevent or reduce the pollution of waters of Georgia."

31. The NPDES Construction Stormwater General Permits provide that the owner and operator of a construction site "must implement and maintain the provisions of the [ESPC] Plan . . . as a condition of this permit."

32. Under these permits, "the primary . . . permittee remains responsible for insuring that the [ESPC] Plan . . . meets the requirements of th[e] permit."

33. Under these permits, the "failure to properly design, install, or maintain [BMPs] shall constitute a violation of th[e] permit for each day on which such failure occurs" and "if during the course of the permittee's routine inspection BMP failures are observed which have resulted in sediment deposition into Waters of the State, the permittee shall correct the BMP failures and submit a summary of the violations to EPD."

34. A nephelometric turbidity unit ("NTU") is a numerical unit of measure of water quality based upon photometric analytical techniques for measuring the amount of light scattered by fine particles of a substance in suspension, including sediment and other pollutants.

35.     Under the NPDES Construction Stormwater General Permits, "a discharge of storm water runoff from disturbed areas where [BMPs] have not been properly designed, installed, and maintained shall constitute a separate violation for each day on which such discharge results in the turbidity of receiving water(s) being increased by more than . . . twenty-five (25) nephelometric turbidity units ["NTU"] regardless of a permittee's [election to sample outfalls]."

36.     Under these permits, "when the permittee has elected to sample outfall(s), the discharge of storm water runoff from disturbed areas where [BMPs] have not been properly designed, installed, and maintained shall constitute a separate violation for each day on which such condition results in the turbidity of the discharge exceeding the ["NTU"] value [applicable] to the construction site."

37.     The permits state that "it is not a defense to compliance with th[e] permit that a [EPD] has approved the permittee's [ESPC] Plan or failed to take enforcement action against the permittee for violations of the [ESPC] Plan or other provisions of th[e] Permit."

38.     The limitations and conditions of the NPDES Construction Stormwater General Permits apply to owners and operators of a construction site until it has undergone final stabilization, all stormwater discharges associated with construction activity that are authorized by the General Permit have ceased, the site is in compliance with the General Permit, all temporary BMPs have been removed, and the owners and operators submit signed Notices of Termination ("NOTs") to EPD.

39.     The CWA and the GWQCA also prohibit any person from discharging stormwater associated with industrial activity without first submitting to EPD a valid NOI to be covered by and comply with NPDES Industrial Stormwater General Permit No. GAR050000 and

except in accordance with the limitations, monitoring requirements, and other conditions set forth in this General Permit.

## FACTUAL BACKGROUND

40.     The GRP Madison Facility is adjacent to and/or directly upstream of the Russell Farm and Michael Farm and drains to ponds and tributaries of Beaverdam Creek on the Russell Farm and Michael Farm that are "water of the United States" under the CWA.

41.     Beaverdam Creek is on the EPD list of "impaired streams" under the CWA for not supporting its designated use of fishing.

42.     For many years before Defendants began their activity on the GRP Madison Facility, Plaintiffs used and enjoyed the ponds and pastures on their properties for farming, recreation, and aesthetic enjoyment without interference or suffering damages thereto.

43.     After Defendants acquired the GRP Madison Facility, they began demolishing an old wood joist plant and constructing an approximately 58-megawatt biomass power plant on this parcel.

44.     Construction activities by Defendants on the GRP Madison Facility also include construction of an approximately 3-million-gallon water tank adjacent to the Russell Farm for the power plant.

45.     Contiguous to the GRP Madison Facility is an area where a water line integral to the functioning of the water tank and power plant is being constructed along the length of Office Drive and connects to the water tank.

46.     Since acquiring the property in 2015, Defendants have not had any valid coverage under NPDES Industrial Stormwater General Permit to discharge polluted stormwater from industrial activity on the GRP Madison Facility into ponds and streams on Plaintiffs' farms.

9

47.     Around May 25, 2017, EPD received a Notice of Intent from Defendant GRP for coverage under NPDES Construction Stormwater General Permit No. GAR100001 for disturbance of 3.52 acres on the GRP Madison Facility.

48.     Defendant GRP Madison, owner of the GRP Madison Facility, did not submit an NOI to EPD until April 2018.

49.     Around April 26, 2018, EPD received a Notice of Intent from Defendants GRP and GRP Madison for coverage under NPDES Construction Stormwater General Permit No. GAR100002 for disturbance of an additional 1.9 acres (5.42 acres total).  Defendant GRP Madison was listed as "Owner" and Defendant GRP was listed as "Operator" of the GRP Madison Facility.

50.     Both the May 2017 and April 2018 NOIs were invalid and remain invalid.

51.     The NOIs did not contain the locations of the receiving waters or sampling outfalls on a map or drawing of appropriate scale.

52.     The disturbed acres indicated on the ESPC Plan and the actual disturbed acres on the GRP Madison Facility exceed the number of disturbed acres indicated on the NOIs.

53.     The size of the construction site also exceeds the number of acres indicated on the NOIs.

54.     The NOIs improperly identify a NTU sampling value of 75 NTUs instead of the proper value 50 NTUs based on the size of the construction site.

55.     From at least May 2017 to the present, Defendants GRP and GRP Madison have not had valid coverage under the General Permits.

56.     From at least May 2017 to the present, there have been and continue to be frequent discharges of heavily polluted stormwater (containing silt, sediment, concrete

wastewater, construction waste, and other pollutants) (collectively, "Pollutants") from construction activities on the GRP Madison Facility, onto Plaintiffs' farms, and into ponds and tributaries of Beaverdam Creek on Plaintiffs' farms, via pipes, culverts, channels, and other point sources on and/or adjacent to the GRP Madison Facility.

57.     Even if Defendants GRP and GRP Madison have had valid coverage under a NPDES permit, from at least May 2017 to the present, they have repeatedly violated and continue to violate the terms and conditions of the NPDES Construction Stormwater General Permits including those terms and conditions specified in the Notice Letter.

58.     These violations have caused and continue to cause repeated discharges of Pollutants from the GRP Madison Facility onto Plaintiffs' farms and into tributaries of Beaverdam Creek via point sources on and/or adjacent to the GRP Madison Facility.

59.     The dates and locations of the permit violations and/or illegal discharges include but are not limited to those specified in the Notice Letter.  *See also supra* Fig. 1.

60.     There is a reasonable likelihood that Defendants GRP and GRP Madison will continue to violate the terms and conditions of the General Permits and illegally discharge Pollutants from the GRP Madison Facility onto Plaintiffs' farms and into tributaries of Beaverdam Creek via point sources on and/or adjacent to the GRP Madison Facility.

61.     Indeed, on January 10, 2019, EPD inspected the GRP Madison Facility and found improperly designed, installed, and/or maintained BMPs on and failures to conduct final stabilization on the GRP Madison Facility.

62.     In addition, discharges of Pollutants from the GRP Madison Facility onto Plaintiffs' farms and into tributaries of Beaverdam Creek via point sources on and/or adjacent to

the GRP Madison Facility recently occurred on December 21 & 28-30, 2018, January 3-5, 13, 20 & 24, 2019, and February 12-13 & 19, 2019. *See infra* Figs. 3–5.

63.     On several days before and after sending the Notice Letter, including as recently as February 19, 2019, Plaintiffs have personally observed discharges of heavily polluted stormwater runoff from disturbed areas on the GRP Madison Facility where BMPs have not been properly designed, installed, and maintained onto Plaintiffs' farms and into tributaries of Beaverdam Creek via point sources on and/or adjacent to the GRP Madison Facility.

64.     Water quality sampling conducted by Plaintiffs before and after sending the Notice Letter, including as recently as February 12, 2019, found that these discharges observed by Plaintiffs resulted in the turbidity of outfalls to and tributaries of Beaverdam Creek being increased by hundreds to thousands of NTUs.

65.     Defendants' construction activity on the GRP Madison Facility is ongoing and they have yet to submit a valid Notice of Termination to EPD.

66.     Defendants have also failed to perform and submit reports of inspections and sampling required by the NPDES Construction Stormwater General Permits.

67.     Defendants have also discharged and continue to discharge excess and polluted stormwater associated with industrial activity from the GRP Madison Facility, onto Plaintiffs' farms, and into ponds and tributaries of Beaverdam Creek via point sources on and/or adjacent to the GRP Madison Facility (including those identified in the Notice Letter) without coverage under and/or in violation of the terms and conditions of the NPDES Industrial Stormwater General Permit.

68.     The dates and locations of these illegal discharges of stormwater associated with industrial activity include but are not limited to those specified in the attached Notice Letter.

**Fig. 3: Discharges from Construction Site and Erosion of Russell Field (Feb. 19, 2019)**





**Fig. 4: Discharges of Pollutants from Pipe 2 into Tributary on Russell Farm (Feb. 19, 2019)**



**Fig. 5: Discharges of Pollutants from Pipe 1 into Michael Pond (Feb. 12, 2019)**




69.     Plaintiffs have observed oil, petroleum, hydraulic fluids, and other pollutants in the industrial stormwater discharged from the GRP Madison Facility.

70.     Defendants' permit violations and illegal discharges have damaged and continue to damage Plaintiffs' farms, including by eroding their fields and pastures, filling their ponds and streams with Pollutants (including streams that their cattle use for drinking water), and eroding dams and stream channels on their farms.

71.     Defendants' permit violations and illegal discharges have forced Mr. Russell to remove cattle from his pastures and have impaired the health and profitability of his cattle herd.

72.     Defendants' permit violations and illegal discharges also have damaged and continue to damage Plaintiffs by interfering with their use and enjoyment of their properties for farming and their ponds and streams for farming, recreation, and aesthetic enjoyment.

73.     Within the past four years, Defendants have also intentionally pumped and discharged on multiple occasions excess and polluted stormwater onto Plaintiffs' Properties using hoses, pumps, culverts, and channels.  Upon information and belief, Defendants did such pumping to dewater areas of the GRP Madison Facility.

74.     Within the past four years, Defendants have also unnaturally and intentionally released water from ponds and other areas of the GRP Madison Facility onto Plaintiffs' farms.

75.     Defendant GreenFuels Energy has had and continues to haveoperational control of those activities at the GRP Madison Facility necessary to ensure compliance with the ESPC Plan and the terms and conditions of the General Permits.

76.     Defendant GreenFuels Energy has had and continues to have authority to exercise control over Defendants GRP and GRP Madison's activities on the GRP Madison Facility that

caused and continue to cause violations of the CWA and damage to Plaintiffs thereby making GreenFuels Energy, LLC, liable for such violations and damage.

77.     Defendant GreenFuels Energy is also the mere alter ego and/or business conduit of Defendants GRP and GRP Madision such that Defendant GreenFuels Energy is derivatively liable for violations of the CWA and damage to Plaintiffs by Defendants GRP and GRP Madison.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Ongoing Violations of Sections 301 and 402 of the Clean Water Act)

78.     Plaintiffs incorporate by reference all the preceding factual allegations.

79.     Defendants' past and ongoing discharges of excess and heavily polluted stormwater containing silt, sediment, concrete wastewater, construction waste, and other pollutants, from industrial and construction activity on the GRP Madison Facility owned and operated by Defendants, onto Plaintiffs' farms, and into ponds and tributaries of Beaverdam Creek on Plaintiffs' farms (waters of the United States) via pipes, culverts, channels, and other point sources on and/or adjacent to the GRP Madison Facility, without valid coverage under and/or in violation of the terms and conditions of the NPDES Construction and/or Industrial Stormwater General Permits, violated and continue to violate Sections 301 and 402 of the CWA.

### SECOND CLAIM FOR RELIEF
### (Violation of Riparian Rights)

80.     Plaintiffs incorporate by reference all the preceding factual allegations.

81.     Defendants' past and ongoing discharges of excess and heavily polluted stormwater from the GRP Madison Facility onto Plaintiffs' farms so polluted and adulterated

them as to interfere with the enjoyment of the running water on Plaintiffs' farms by Plaintiffs and constitute a violation of Plaintiffs' riparian rights under O.C.G.A. §§ 44-8-1 and 51- 9-7.

82.     Plaintiffs are entitled to damages for the costs to repair Plaintiffs' farms and the diminution in value of Plaintiffs' farms from the past and ongoing discharges.

**THIRD CLAIM FOR RELIEF**
**(Trespass)**

83.     Plaintiffs incorporate by reference all the preceding factual allegations.

84.     Defendants' past and ongoing pumping and discharges of excess and heavily polluted stormwater from the GRP Madison Facility onto Plaintiffs' farms constitute a trespass.

85.     Plaintiffs are entitled to damages for the costs to repair Plaintiffs' farms and the diminution in value of Plaintiffs' farms from the past and ongoing discharges.

**FOURTH CLAIM FOR RELIEF**
**(Nuisance)**

86.     Plaintiffs incorporate by reference the preceding factual allegations.

87.     Defendants' past and ongoing discharges of excess and heavily polluted stormwater from the GRP Madison Facility onto Plaintiffs' farms caused Plaintiffs hurt, inconvenience, and/or damage to Plaintiffs' farms and constitute a nuisance.

88.     Plaintiffs are entitled to damages in amounts to be determined by the enlightened conscience of a jury.

**FIFTH CLAIM FOR RELIEF**
**(Negligence)**

89.     Plaintiffs incorporate by reference all the preceding factual allegations.

90.     Defendants had and have a duty to undertake construction activities and operations on the GRP Madison Facility with a degree of care which is exercised by ordinarily

17

prudent persons under the same or similar circumstances and which every prudent man takes of his own property of a similar nature.  O.C.G.A. § 51-1-2.

91.     Defendants had and have a duty to use properly designed, installed, and maintained BMPs when undertaking construction activities and operations on the GRP Madison Facility.

92.     Defendants had and have a duty not to so pollute or adulterate tributaries of Beaverdam Creek as to interfere with the enjoyment of them by, or lessen their value to, the next owner.

93.     Defendants breached these duties owed to Plaintiffs.

94.     The breaches of these duties were the direct and proximate cause of damages to Plaintiffs' farms including Plaintiffs' ponds and streams in amounts to be proven at trial.

**SIXTH CLAIM FOR RELIEF**
**(Negligence Per Se)**

95.     Plaintiffs incorporate by reference all the preceding factual allegations.

96.     Defendants' past and ongoing discharges of excess and heavily polluted stormwater from the GRP Madison Facility onto Plaintiffs' farms and ponds and into tributaries of Beaverdam Creek violated and continue to violate several statutes including Sections 301 and 402 of the CWA and O.C.G.A. §§ 44-8-1 and 51-9-7.

97.     Defendants' violations of these statutes were intentional and/or the result of their failure to exercise ordinary care.

98.     Plaintiffs fall within the class of persons these statutes are intended to protect.

99.     Through violations of these statutes, Defendants breached duties owed to Plaintiffs.

100.    The violations of these statutes were the direct and proximate cause of damages to Plaintiffs' farms in amounts to be proven at trial.

101.    The damages to Plaintiffs' farms including Plaintiffs' ponds and pastures are the same damages that the statutes were intended to guard against.

**SEVENTH CLAIM FOR RELIEF**
**(Punitive Damages)**

102.    Plaintiffs incorporate by reference all the preceding factual allegations.

103.    Plaintiffs have repeatedly asked Defendants over the past four years to cease the discharges of excess and heavily polluted stormwater from the GRP Madison Facility onto Plaintiffs' farms.

104.    Defendants promised Plaintiffs relief but failed to take effective and appropriate action to remedy the situation and the ongoing damage.

105.    Defendants have also repeatedly intentionally pumped and drained excess stormwater onto Plaintiffs' farms using hoses, pumps, culverts, and channels.

106.    These and other actions by Defendants regarding the past and ongoing discharges of excess and heavily polluted stormwater from the GRP Madison Facility show willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which raises the presumption of conscious indifference to the consequences of such actions on Plaintiffs' farms.

107.    Defendants' acted and failed to act with the specific intent to cause harm to Plaintiffs' farms and Plaintiffs' use and enjoyment of same such that there is no cap on the amount of punitive damages that a jury may impose in this case.

## EIGHTH CLAIM FOR RELIEF
### (Attorneys' Fees and Expenses of Litigation)

108.    Plaintiffs incorporate by reference all the preceding factual allegations.

109.    Plaintiffs have repeatedly asked Defendants over the past four years to cease the discharges of excess and heavily polluted stormwater from the GRP Madison Facility onto Plaintiffs' farms, but the Defendants failed to take effective actions to remedy the situation and the ongoing damage.

110.    Through this and other actions and omissions, Defendants' have acted in bad faith and have caused Plaintiffs unnecessary trouble and expenses within the meaning of O.C.G.A. § 13-6-11 such that attorneys' fees and expenses of litigation shall be allowed as part of the damages in this case.

111.    Through this and other actions and omissions, Defendants acted and/or failed to act with the specific intent to cause harm to Plaintiffs' farms and interfere with Plaintiffs' use and enjoyment of their farms.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for this Court to:

A.    Grant Plaintiffs a trial by jury on all their claims for relief;

B.    Enter judgment in favor of Plaintiffs on all their claims for relief;

C.    Declare under the federal Declaratory Judgment Act that Defendants are liable and/or derivatively liable for violations of §§ 301 and 402 of the CWA;

D.    Impose federal civil penalties against Defendants under § 505(a) of the CWA of $53,484 per violation of the CWA per day by Defendants.

E.    Issue a temporary and/or permanent injunction ordering Defendants to cease their violations of the CWA, including further illegal and unpermitted discharges of Pollutants from

GRP Madison Facility onto Plaintiffs' farms and into tributaries of Beaverdam Creek, immediately take all necessary steps to come into permanent and consistent compliance with the CWA, and remove the Pollutants discharged into Plaintiffs' ponds and streams;

      F.     Award Plaintiffs' attorneys' fees and expenses of litigation under the CWA and O.C.G.A. § 13-6-11 their costs in bringing this action including reasonable attorneys' fees and expenses of litigation including expert witness fees;

      G.     Award Plaintiffs punitive and compensatory damages in amounts proven at trial and determined by the enlightened conscience of a jury;

      H.     Enter an order that the Court shall maintain jurisdiction over this action until Defendants come into consistent and permanent compliance with the CWA and comply with every order of this Court in this action including any consent decree entered by this Court; and

      I.     Grant Plaintiffs such other relief as this Court deems just and proper.


                Respectfully submitted,


Date: **February 20, 2019**          **/s/ Tyler J. Sniff**
                                    Donald D.J. Stack
                                    Georgia Bar No. 673735
                                    Tyler J. Sniff
                                    Georgia Bar No. 403125
                                    STACK & ASSOCIATES, P.C.
                                    260 Peachtree Street, Suite 1200
                                    Atlanta, Georgia 30303
                                    Telephone: (404) 525-9205
                                    Facsimile: (404) 522-0275
                                    Email: dstack@stack-envirolaw.com
                                    tsniff@stack-envirolaw.com

                                    *Counsel for Plaintiffs*